UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Steven Vang,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>    Defendants. | No. 1:24-cv-01292-KES-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>(ECF No 12, 18) |

### I. Introduction

Plaintiff Steven Vang seeks judicial review of a final decision of the Commissioner of Social Security denying Plaintiff's applications for social security disability insurance benefits (SSDI) and supplemental security income (SSI) pursuant to Titles II and XVI, respectively, of the Social Security Act.[1]

### II. Factual and Procedural Background

Plaintiff applied for SSDI and SSI benefits on July 23, 2021, alleging a disability onset date of October 28, 2018. AR. 278, 288. Plaintiff's claim was initially denied on September 28, 2021, AR 83–84, and on reconsideration on December 17, 2021. AR113–14. An ALJ hearing was held on January 23, 2024. AR 33–52. The ALJ issued an unfavorable decision on February 1,

---
[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Docs. 7, 10.

2024. Ar. 14–32. The Appeals Council denied Plaintiff's request for review on October 3, 2024, making the ALJ's decision the final decision of the Commissioner. AR 1–6. This appeal followed. ECF No. 1.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or Plaintiff is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given Plaintiff's RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.  The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 28, 2018, the alleged onset date. AR 19. At Step Two, the ALJ found that Plaintiff had severe impairments of status-post ankle fracture with repair and muscle atrophy. AR 20.

At step two the ALJ also found as follows:

I find the claimant's hypothyroidism, hypercholesterolemia, prediabetes, gastritis, constipation, vitamin D deficiency, obesity, and all other medically determinable impairments that are alleged and found in the record, other than those enumerated above, are "non-severe" within the meaning of the Regulations, as they have been responsive to treatment and/or cause no more than minimally vocationally relevant

3

limitations. Specifically, the records indicate that the claimant, although the claimant was diagnosed with hypothyroidism, his labs are within normal limits. (Exh. 18F/4). Although the claimant has prediabetes, his A1c as of June 2023 was 5.5 and he has been treating with Semaglutide since August 23, 2023. (Exh. 19F/25). Further, although the claimant has been diagnosed with prediabetes and gastritis, treated with omeprazole since May 23, 2023; constipation, treated with Bisacodyl since May 23, 2023; and vitamin D deficiency, treated with Ergocalciferol since August 23, 2023. These conditions were generally stable with medication, and the record indicates the claimant required no more than conservative treatment for these conditions. (Exh. 18F; 19F/25). The claimant's obesity and hypothyroidism have required no more than limited and conservative treatment. (Exh. 18F/4).

At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 21.

Prior to step four, the ALJ found that Plaintiff had the following RFC:

[Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand and walk a total of 6 hours in an 8-hour workday, and can sit a total of 6 hours in an 8-hour workday. He can occasionally climb ladders, ropes, or scaffolds [Plaintiff] can frequently climb ramps or stairs, balance, knee [sic], crouch, and crawl, and can frequently engage in use of bilateral foot controls.

AR 22–24.

At step four, the ALJ found Plaintiff had no past relevant work. AR 24. At step five, in reliance on the testimony of a Vocational Expert (VE), the ALJ found that considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform: cashier II, housekeeping cleaner, and routing clerk. AR 25.

Accordingly, the ALJ found that Plaintiff was not disabled at any time since the alleged disability onset date of October 28, 2018. AR 26.

**V.     Factual Summary**

      **1.     Summary of Subjective And Objective Evidence**

This summary is largely derived from the ALJ's summary, the accuracy of which is not specifically disputed. A truncated summary is provided here for context, but pin-citations are only included when provided by the ALJ.

Plaintiff alleges he can't work due to a car accident which broke his ankle, neck and legs, affecting his mobility and sitting. He suffers backpain and uses a wheelchair. Ex. 2E; Hearing Transcript. (Ex. 4E; Hearing Transcript).

Following an October 28, 2018 car accident, Plaintiff was diagnosed with ankle fracture with repair, and muscle atrophy. He underwent Open Reduction and Internal Fixation surgery (ORIF). Exs. 7F; 14F; 17F at 6. The ankle fracture was visible on imaging. Exs. 11F at 16; 17F at 35. Imaging studies demonstrate healing fractures with minimal callus formation. Id. He made gradual progress in physical therapy. Ex. 16F at 6. Months later, he was doing well and pain was well controlled. Exs. 3F at 24; 4F/23. He presented with minimally reduced power at 4/5 in all extremities. Exs. 10F at 3; 18F at 3, 6, 9). Very small leg atrophy was noted with extremity motor strength 3/5 and a shuffling gait. Exs. 19F at 5. Back tenderness was noted and a cane was ordered. Id. At times he had no edema, could ambulate normally, but at other times less so. Exs. 10F at 3; 16F at 8; 18F at 3, 6, 9. A wellness exam in 2023 was normal. Exs. 19F at 5. He did physical activity such as camping and walking. Ex. 9F at 32.

**VI.    Issues Presented**

Plaintiff asserts three claims of error: 1- "The ALJ's decision is unsupported by substantial evidence as he failed <u>to find Plaintiff's mental impairment severe at Step 2</u> and did not include any limitations in the RFC reflective of Plaintiff's limitations <u>related to [his] impairment</u>." MSJ at 4–8, ECF No. 12 (emphasis added).; **2-** "The ALJ's RFC determination is unsupported by substantial evidence as he failed to properly evaluate the medical opinions of record in accordance with the prevailing rules and regulations." MSJ at 8–11; **3- "**The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer any reason for rejecting Plaintiff's subjective complaints." MSJ at 11–15

    **A.    Step Two Severity Threshold**

        **1.    Applicable Law**

At step two, the ALJ must determine if the claimant has a medically severe impairment or combination thereof. "An impairment or combination of impairments is not severe if it does not

5

significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: 1- physical functions such as walking, standing, sitting, lifting, and carrying; 2- capacities for seeing, hearing, and speaking; 3- understanding, carrying out, and remembering simple instructions; 4- use of judgment; 5- responding appropriately to supervision, co-workers, and usual work situations; and 6- dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The step-two severity threshold is not high. "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290. "Step two, then, is a de minimis screening device [used] to dispose of groundless claims[.]" Smolen, 80 F.3d at 1290.

**2.    Analysis**

Plaintiff emphasizes the ALJ's notation that Plaintiff received prescription medication for his depression. Plaintiff contends that this should have resulted in a finding that Plaintiff had a medically determinable impairment

Plaintiff also highlights depressed mood and affect.

Although this may support a medically determinable impairment, any error would be harmless as Plaintiff identifies no functional limitations caused by the potential MDI of depression. Specifically, Plaintiff identifies no basis to conclude that his potential MDI of depression significantly undermines his ability to perform basic work activities. Nor does he identify the activities that would be undermined, the extent to which they would be undermined, or how/why they would be undermined.

Here, Plaintiff references various non-controlling dicta from out of district cases which suggest that a prescription for any "mind altering" psychotropics suggests aggressive treatment. He cites the following: "[t]he Ninth Circuit and other courts have recognized within the context of mental health conditions that the prescription of psychiatric medications is not indicative of conservative treatment." Green v. Berryhill, 217CV01339APGNJK, 2018 WL 4291960, at *5

(D. Nev. Aug. 20, 2018), report and recommendation adopted, 217CV01339APGNJK, 2018 WL 4286165 (D. Nev. Sept. 6, 2018) (citing Drawn v. Berryhill, 728 Fed. Appx. 637, 642 (9th Cir. 2018) (unpublished decision holding that the ALJ erred in finding the claimant's treatment to be conservative "given that she was prescribed a number of psychiatric medications")). "Much treatment of mental disorder involves medication management, and it is unpersuasive to call this 'conservative treatment,' and state that therefore a claimant does not have a severe impairment. Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment." Green, 2018 WL 4291960, at *5 (citing Baker v. Astrue, Case No. ED CV 09-01078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) (emphasis added).

These cases have questionable applicability to Plaintiff. To begin, the characterization of anti-depressants as "mind altering" psychotropics suggests they are a rare, unique and a non-conservative treatment regimen reserved for only people whose mental health is uncommonly impaired. In fact, it is quite routine as upwards of 1 in 7 Americans are prescribed anti-depressants. See https://www.cdc.gov/nchs/products/databriefs/db377.htm (last accessed November 11, 2025). Secondly, the evidence of Plaintiff's depression was not sufficiently indicative that it would limit him in basic work activities. Plaintiff cites one August 23, 2023 treatment note with NP Lee indicating he was prescribed Amitriptyline[2] based on clinical findings of "flat affect with depressed mood." MSJ at 6 (citing AR 1101).

Finally, at a May 23, 2023 visit, NP Lee noted that Plaintiff was alert and oriented, had a normal appearance, appropriate behavior, good eye contact, appropriate conversation, and normal mood and affect. AR 1102, 1103.

Case law is clear that if the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted); and even when a plaintiff presents a rational view of the evidence, affirmance is appropriate when the

---

[2] Plaintiff was prescribed a dosage of only 10mg of Amitriptyline once daily at bed time. AR 1101. According to the Mayo clinic, doses for depression in adults range from 50mg to 100mg per day. https://www.mayoclinic.org/drugs-supplements/amitriptyline-oral-route/description/drg-20072061

Commissioner's view is equally rational. Jamerson, 112 F.3d at 1067 (The "key question" for the Court "is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding.").

Notably, both 2023 examinations post-date the alleged disability onset date of October 28, 2018 by nearly 5 years, and Plaintiff cites no other records regarding his depression. AR 278, 288.

These examinations do not speak to Plaintiff's depression the previous 5 years or the functional implications thereof. With respect to the lack of evidence regarding Plaintiff's depression, Plaintiff suggests the ALJ ought to have corrected this ambiguity and/or inadequacy of the record by ordering a consultative examination. MSJ at 6. But this impermissibly shifts the burden to the ALJ to disprove disability as opposed to Plaintiff's burden to prove disability and to undertake the primary responsibility for seeking treatment, obtaining records of such treatment, and producing them. See Ukolov, 420 F.3d at 1005 (9th Cir. 2005) ("claimant carries the initial burden of proving a disability."); Bowen, 482 U.S. at 146 (noting claimant is in a better position to provide information about his own medical condition); SSR 17-4p (noting that the Commissioner has some role in developing the evidentiary record, but claimants and their counsel have the primary responsibility).

Additionally, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." Meanel, 172 F.3d at 1115 (9th Cir. 1999); King, 2024 WL 1257331, at *7 (finding a plaintiff waived the argument that a consultative examination was required and counsel didn't raise it below); Brandon, 2022 U.S. Dist. LEXIS 95848, at *10 (same).

Further, Plaintiff identifies no basis to conclude that any failure by the ALJ to recognize depression as an MDI was harmful. "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). If Plaintiff feels differently, it was his responsibility to have explained how his depression significantly undermined his ability to perform basic work activities, what activities would be

1 undermined, the extent to which they would be undermined, or how they would be undermined.

2 In sum, there is not sufficient support for the notion that the RFC should account for: 1-
3 Plaintiff's depression diagnosis 5 years after the alleged onset date of his disability, and 2- his
4 prescription for a very low dose Amitriptyline.  Moreover, there is simply very little evidentiary
5 basis to suggest that Plaintiff's depression significantly limited his performance of basic mental
6 work activities, whether alone or in conjunction with other MDIs, and whether severe or not.
7 Indeed, Plaintiff posits no theory about how this extremely limited evidence of an MDI should be
8 accounted for in Plaintiff's RFC.

9 Plaintiff also provides other citations and quotations of caselaw, the applicability of
10 which is neither apparent nor explained.  MSJ at 6–7.  The subjects included are: 1- disabled
11 claimants can often do more than rest in bed all day, and they need not be utterly incapacitated to
12 receive benefits, a point which is typically related to Plaintiff's daily activities, which is not at
13 issue here); 2- ALJ's can only make legal judgments, not medical judgments–a point typically
14 related to the ALJ rejecting a medical opinion in favor of the ALJ's own layperson opinion,
15 which is also not at issue here; 3- barring some exceptions, the ALJ cannot formulate the RFC
16 without referencing a medical opinion–same; 4- an ALJ cannot interpret raw medical data–same;
17 and, 5- the ALJ cannot **go outside the record and consult medical** textbooks–same.

18 Plaintiff does not explain the relevance of these alleged principles, and their applicability
19 here is not self-evident. See Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir.
20 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not
21 preserve a claim, particularly when, as here, a host of other issues are presented for review")
22 (citation omitted).

23 Plaintiff has therefore not established that the ALJ committed harmful error in finding
24 Plaintiff's depression was not an MDI.

### B.  Medical Opinions

#### 1.  Applicable Law

27 Before proceeding to steps four and five, the ALJ determines the claimant's residual
28 functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations"

and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### 2. Analysis

Plaintiff questions the ALJ's RFC analysis in which the ALJ found the opinions of Plaintiff's treating physician, Dr. Gursahani, unpersuasive. AR 23–24. Plaintiff contends the ALJ's rational was not consistent with the record and prevailing legal standards.[3]

Here, in pertinent part, Plaintiff's treating provider opined that Plaintiff's physical impairments would limit him to a less than sedentary range of work. AR 944–47. The ALJ stated

---

[3] These regulations are well established now, 8 years after enactment. Perhaps they should no longer considered "new."

that he found "this opinion is unpersuasive as it is inconsistent with and unsupported by the record as a whole including the objective findings as indicated above. It is not supported by any treatment note that shows such severe maladies or limitations." Ar. 24.

Plaintiff emphasizes that the ALJ's discussion purportedly assessed 1,100 pages of medical evidence, which the ALJ distilled down to only one paragraph:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the record as a whole, including the objective findings. The record does establish that the claimant has medically diagnosed ankle fracture with repair, and muscle atrophy. The claimant was struck by car on October 28, 2018, the alleged onset date, and underwent an ORIF. (Exh. 7F; 14F; 17F/6). The claimant's ankle fracture with repair can be seen in imaging studies. (Exh. 11F/16; 17F/35). Imaging studies demonstrate <u>healing fractures</u> with <u>minimal callus formation</u>. (Id.). The claimant did <u>make gradual progress</u> in physical therapy. (Exh. 16F/6). Months after the accident in 2019, treatment records indicated that the claimant <u>was doing well overall</u> and that his pain <u>was well controlled</u>. (Exh. 3F/24; 4F/23). He has presented with <u>minimally reduced power</u> at 4/5 in all extremities. (Exh. 10F/3; 18F/3, 6, 9). Leg atrophy was noted on examination and indicated as very small, with some motor strength weakness of 3/5 of the extremities and a shuffling gait. (Exh. 19F/5). There has been some tenderness noted in his back on examination and a cane was ordered to help with his gait. (Id.). However, in spite of his impairments, the claimant has presented with minimal abnormalities on physical examination. The claimant has presented with no edema, and many portions of the record notes the ability to ambulate with no gait abnormality as well as other normal findings. (Exh. 10F/3; 16F/8; 18F/3, 6, 9). His 2023 wellness exam was noted as normal. (Exh. 19F/5). Additionally, the claimant engages in a range of physical activity including camping and walking. (Exh. 9F/32).

However, the ALJ also summarized that the claimant engages in a range of physical activity including camping and walking. (Exh. 9F/32). AR. 22-23. Plaintiff contends this is impermissible picking and choosing of records to support the ALJ's conclusion. Garrison, 759 F.3d at 1017 (9th Cir. 2014); Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir.2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Plaintiff argues that a large portions of the records <u>that the ALJ did not address</u> within the

11

1  ALJ's decision contain treatment notes fully supportive of Dr. Gursahani's opinion. For example,
2  Plaintiff's argues that on August 23, 2023, an objective examination demonstrated that Plaintiff
3  had "legs with atrophy, <u>small</u> and weakness, strength of 3/5. Ankles with tenderness" AR 110
4  (emphasis added); and a May 23, 2023, examination which showed Plaintiff had "<u>legs atrophy,</u>
5  <u>very small</u>, weak motor strength, shuffling gait, motor strength of 3/5." AR. 1102 (emphasis
6  added). Finally, Plaintiff contends the ALJ's flawed accounting of the records would make a
7  reasonable person assume that Plaintiff's conditions improved, while the actual evidence of
8  record demonstrates otherwise.

9  To the contrary, the ALJ did not ignore this evidence or selectively pick only benign
10 findings. As quoted above, the ALJ explicitly acknowledged the abnormalities such as the
11 minimal atrophy and 3/5 motor strength, and in so doing the ALJ extensively juxtaposed those
12 abnormalities to normal findings and other supporting evidence of adequate functionality as
13 follows: **1-** imaging studies demonstrating <u>healing fractures</u> with <u>minimal callus formation</u>. (Id.);
14 **2- t**he claimant did <u>make gradual progress</u> in physical therapy. (Exh. 16F/6); **3-** Months after the
15 accident in [2018], treatment records indicated that the claimant <u>was doing well overall</u> and that
16 his pain <u>was well controlled</u>. (Exh. 3F/24; 4F/23); **4-** He has presented with <u>minimally reduced</u>
17 <u>power</u> at 4/5 in all extremities. (Exh. 10F/3; 18F/3, 6, 9); **5-** Leg atrophy was noted on
18 examination and indicated as <u>very small</u>, with some motor strength weakness of 3/5 of the
19 extremities and a shuffling gait. (Exh. 19F/5); **6-** There has been some tenderness noted in his
20 back on examination and a cane was ordered to help with his gait. (Id.); **7-** However, in spite of
21 his impairments, the claimant has presented with minimal abnormalities on physical examination;
22 **8-** The claimant has presented with <u>no edema</u>, and many portions of the record notes <u>the ability to</u>
23 <u>ambulate with no gait abnormality</u> as well as other normal findings. (Exh. 10F/3; 16F/8; 18F/3, 6,
24 9); **9-** His 2023 wellness exam was noted as normal. (Exh. 19F/5); and, 10- the claimant engages
25 in a range of <u>physical activity including camping and walking</u>. (Exh. 9F/32).

26 Plaintiff does not acknowledge the ALJ's applicable discussion, nor establishes error with
27 respect to the ALJ's rejection of Dr. Gursahani's opinion.

28  **C.** **<u>Subjective Testimony</u>**

12

### 1. **Applicable Law**

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom; and 7- Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2. **Analysis**

Rather than paraphrase, Plaintiff's argument will be quoted in full to illustrate its deficiency:

> The regulations require the ALJ to account for the functional limitations caused by all impairments when formulating the RFC finding, including the impact of any related symptoms. See SSR 96-8p; 20 C.F.R. §§ 416.923, 416.945(a)(2). In evaluating a Plaintiff's subjective complaints, an ALJ engages in

a two-step process to determine whether symptom complaints are substantiated. As outlined in Garrison v. Colvin:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment `which could reasonably be expected to produce the pain or other symptoms alleged.'" Lingenfelter, 504 F.3d at 1035-36 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted)). In this analysis, the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir.1996). Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof. Garrison v. Colvin, 759 F. 3d 995, 1014 (9th Cir. 2014). If this step is satisfied and there is no evidence of malingering, the ALJ must offer specific, clear, and convincing reasons for rejecting a claimant's subjective complaints. Id. (Citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991).

The ALJ acknowledged Plaintiff's alleged limitations due to his conditions. Ar. 22. The ALJ found that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms. Ar. 22. Therefore, the ALJ was not permitted to discredit Plaintiff's symptom complaints, "merely because they are unsupported by objective medical evidence." Bunnell, 947 F.2d at 347-48. "[P]roviding a summary of medical evidence...is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020); (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015)) (Explaining that a "detailed overview of...medical history" is insufficient) (emphasis in original). Further, "it is problematic that the ALJ failed to indicate which of Plaintiff's allegations are not supported by objective findings." Godinez v. Berryhill, No. SACV 17-0194 SS, 2017 WL 6349720, at *4 (C.D. Cal. Dec. 11, 2017) (citing Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001)) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). The ALJ's general summary of evidence offers no finding or conclusion as to what evidence undermines which portions of Plaintiff's alleged limitations, particularly as, as discussed further above, the ALJ's summary of the evidence is wholly lacking.

"Social Security regulations define residual functional capacity as the 'maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.'" Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998) (quoting 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c) (emphasis added)). "In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's 'ability to work on a sustained basis.'" Reddick, 157 F.3d at 724 (quoting 20 C.F.R. § 404.1512(a); Lester v. Chater, 81 F.3d 821, 833 (9th Cir.1995) (internal quotation marks omitted)). "The regulations further specify: 'When we assess your physical

abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis.'" Id. at § 404.1545(b). "This court has noted that '[o]ccasional symptom-free periods—and even the sporadic ability to work-are not inconsistent with disability.'" Id. (quoting Lester, 81 F.3d at 833). This necessitates that the ALJ must not only consider the Plaintiff's maximum RFC, but also whether she is able to sustain such activity.

When "the ALJ's evaluation of residual functional capacity failed to address claimant's ability to undertake sustained work activity, his analysis did not comport with the Social Security Administration's regulatory requirements." Reddick, 157 F.3d at 724 (citing Cohen v. Secretary of Dept. of Health & Human Servs., 964 F.2d 524, 529 (6th Cir.1992) ("Although her mental capacity perhaps would have been more than adequate, Cohen simply would have lacked the stamina for such employment."); Rose v. Shalala, 34 F.3d 13, 19 (1st Cir.1994) ("The question here is the extent to which claimant's fatigue in fact restricts his residual functional capacity."); Williams v. Shalala, 1995 WL 328487, at *6 (holding that, where the ALJ failed to consider claimant's non-exertional limitations, the "ALJ's decision, on the whole, reflect[ed] an analysis inconsistent with the appropriate framework for assessing disability claims premised on CFS."))

When "the ALJ's evaluation of residual functional capacity failed to address claimant's ability to undertake sustained work activity, his analysis did not comport with the Social Security Administration's regulatory requirements." Reddick, 157 F.3d at 724 (citing Cohen v. Secretary of Dept. of Health & Human Servs., 964 F.2d 524, 529 (6th Cir.1992) ("Although her mental capacity perhaps would have been more than adequate, Cohen simply would have lacked the stamina for such employment."); Rose v. Shalala, 34 F.3d 13, 19 (1st Cir.1994) ("The question here is the extent to which claimant's fatigue in fact restricts his residual functional capacity."); Williams v. Shalala, 1995 WL 328487, at *6 (holding that, where the ALJ failed to consider claimant's non-exertional limitations, the "ALJ's decision, on the whole, reflect[ed] an analysis inconsistent with the appropriate framework for assessing disability claims premised on CFS."))

While Defendant may also attempt to argue that the ALJ noted Plaintiff was able to perform activities of daily living in discounting her subjective complaints, this would do nothing to clear the ALJ's decision of errors. "The Ninth Circuit Court of Appeals has 'repeatedly warned[, however,] that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.'" Fulick, 2018 WL 1466237, at *14 (quoting Garrison, 759 F.3d at 1016 (citations omitted)). "Furthermore, '[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or. take medication.'" Id. (quoting Smolen, 80 F.3d at 1287 n. 7 (citations omitted)). "The Ninth Circuit Court of Appeals has noted:

The critical differences between activities of daily living and activities in a

> fulltime job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ..., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases. Id. (quoting Garrison, 759 F.3d at 1016 (quoting Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012)) (alterations in original)).
>
> Here, the ALJ wholly failed to account for how Plaintiff accomplishes these tasks equates to the ability to sustain work on a "regular and continuing basis" for eight hours a day, five days per week. SSR 96-8p. "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). "Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.'" Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d at 722 (citations omitted); see also Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir.2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ..., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted)). The ALJ's failure to account for the limited manner in which Plaintiff performed her activities, and the frequency in which she did so cannot truly be found to be an appropriate reasoning for the dismissal of Plaintiff's subjective complaints. As such, this is erroneous.

MSJ at 11–15.

There is one significant point to be made here about Plaintiff's discussion.

Although Plaintiff has accurately, exhaustively, and adroitly set forth the applicable law concerning the evaluation of a plaintiff's subjective complaints, the discussion does not specifically identify or reference a "subjective complaint" made <u>by Plaintiff himself</u>, whether in oral testimony, written function reports, or otherwise. The nearest discussion is the following:

> The ALJ acknowledged Plaintiff's alleged limitations due to his conditions. Ar. 22. The ALJ found that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms. Ar. 22. Therefore, the ALJ was not permitted to discredit Plaintiff's symptom complaints, "merely because they are unsupported by objective medical evidence." Bunnell, 947 F.2d at 347-48.

MSJ at 12.

Here again, Plaintiff identifies no error in the ALJ's assessment of Plaintiff's subjective complaints.

**VII.     Recommendations**

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is as follows:

1. That Plaintiff's motion for summary judgment (Doc. 12) be **DENIED.**
2. That Defendant's cross-motion (Doc. 18) be **GRANTED.**
3. That the decision of the Commissioner of Social Security be **AFFIRMED**.
4. That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

**VIII.    Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case. Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 18, 2025**                                /s/ Gary S. Austin
                                                                             UNITED STATES MAGISTRATE JUDGE